ROGERS et ux. v. CRANE CO.

No. 27017. May 25, 1937.

Houston B. Tehee and A. E. Pearson, for plaintiff in error.

Bower Broaddus and Julian B. Fite, for defendants in error.

PER CURIAM. There is no dispute as to the facts in this case, and thus the question for decision is one purely of law. In reviewing the facts we will refer to the litigants as they appear in court below, Crane Company, as plaintiff, and F. A. Rogers and Essie Rogers, as defendants.

Defendants, desirous of rearranging fixtures in bathroom of their dwelling, engaged the Ball Plumbing Company of Tahlequah to do the work, no agreement being made as to the price to be paid.

Before work was begun Ball Plumbing Company sold their plumbing business to Blaine & Lance, who, knowing of the agreement, solicited of the defendants the job and the same was granted without any express agreement as to price.

After the work had progressed, but before the old fixtures had been re-installed, Mrs. Rogers of the defendants, having purchased a pink lavatory, desired to substitute same for the old lavatory (of white color) if other fixtures of pink color could be procured. Blaine & Lance not having such fixtures in stock, she, at their suggestion, tried to locate them at Crane Company, the plaintiff, at Muskogee, but without avail. At her request Blaine & Lance agreed to secure the fixtures and ordered same by phone from the plaintiff, who not having the desired articles in stock at Muskogee secured shipments from other branch offices. The shipments, arriving at different times, were consigned to Blaine & Lance, at whose place of business deliveries were made, except as to the tub, which, at the request of Blaine & Lance, was deposited at the home of the defendants.

At time of making sale of fixtures to Blaine & Lance, the plaintiff was informed by the latter that the articles were to be used on the "Rogers job" and the notation "Your No. Rogers Job," was made on the invoices sent to Blaine & Lance.

Blaine & Lance proceeded with the installation of the new fixtures and when the work neared completion, they presented to the defendants a bill which covered both the service and the fixtures and allowing a credit for old fixtures accepted as such. The bill was forthwith paid by the defendants in full by check bearing the notation "plumbing contract."

Blaine & Lance did not pay the account of plaintiff. At one time they sent to plaintiff their check to cover the account, which was twice negotiated and each time returned unpaid with notation of insufficient funds.

Plaintiff called the matter to the attention of defendants, advising that unless the account was paid they would file lien therefor. The defendants, mentioning their payment to Blaine & Lance, declined to make further payment. Thereupon plaintiff within the 60-day period filed its lien statement as subcontractor, furnishing material, gave notice thereof to the defendants, and within the statutory period filed this their action asking a personal judgment against defendants Blaine & Lance, establishment of a lien against premises of defendants, and for foreclosure thereof.

Trial was had on March 12, 1935, at which time personal judgment was entered for plaintiff against the defendants Blaine & Lance in the sum of $105.19, with interest and for cost; a further judgment was rendered for $50 as attorney's fee for the benefit of the prevailing party upon decision of the issue of plaintiff's alleged right to lien and foreclosure, which

issue was taken and held under advisement until June 10, 1935, at which time the judgment was rendered in favor of the plaintiff and against the defendants H. F. Rogers and Essie Rogers sustaining the lien, directing foreclosure by sale, and awarding to the plaintiff the benefit of said judgment for attorneys' fees.

Defendants Blaine & Lance did not defend against the judgment so rendered against them and are not parties to this appeal. Defendants Rogers filed motion for new trial, which was overruled, and, after proper action taken therefor, prosecute this appeal.

No question is raised as to the correctness of the personal judgment rendered against Blaine & Lance. The assignments of error, so far as presented by their brief, are to the effect that the judgment allowing the lien is contrary to the law and the evidence. Inasmuch as there is no conflict in the evidence, the issue is, as we have stated, purely one of law.

The theory of plaintiffs in error (mentioned in their brief as defendants) is thus tersely presented:

"Defendants proceed on the theory that the materials involved were purchased by them in the due and ordinary course of trade from Blaine & Lance.

"In other words, there was not existent between them and Blaine & Lance such a contract as would give rise to the right of the lien sought to be established, by reason whereof they are entitled to judgment."

Preliminary to the further discussion, they declare sections 10975 and 10977, O. S. 1931, to be the controlling statutes and quote therefrom as follows:

"Section 10975, in part, provides:

" 'Any person who shall, under oral or written contract with the owner of any tract or piece of land, perform labor, or furnish material for the erection, alteration or repair of any building, improvement or structure thereon or perform labor in putting up any fixtures, machinery in, or attachment to, any such building, structure or improvements, * * * shall have a lien upon the whole of said tract or piece of land, the buildings and appurtenances.'

"Section 10977, in part, provides:

" 'Any person who shall furnish any such material * * * may obtain a lien upon such land, or improvements, or both, from the same time, in the same manner, and to the same extent as the original contractor for the amount due him for such material."

As the basis for their argument, it is declared, in substance, that the right of the plaintiff as subcontractor to a lien can exist only if in fact it was the contractual duty of Blaine & Lance in their relationship to the defendants to furnish as well as install the fixtures. Such appears to be a sound interpretation of the law.

In order to show that the necessary element of contract was lacking, three conclusions from the evidence are asserted: (1) The relationship between the defendants and Blaine & Lance touching the acquiring of the fixtures was that solely of buyer and seller and not of employer and contractor; (2) that the duty of Blaine & Lance to the defendants with reference to the installation of the fixtures was an obligation to render "personal service"; (3) since, in either view, the furnishing of the fixtures was no part of the contractor's obligation, as such, there is no basis for lien of subcontractor.

Neither of these conclusions, in our opinion, can be properly deduced from the evidence in this case.

In support of their contention concerning the nature of the contract between defendants and Blaine & Lance, there is cited the case of Mobley v. Leeper Bros. Lumber Co., 89 Okla. 95, 214 P. 174, from which they quote syllabus, pars. 1, 2, 3, and 4. Syllabus, pars. 1 and 2, deal with the status of materialman who contracts directly with the owner and are unimportant here. Syllabus, pars. 3 and 4, are in point, and we requote them as follows:

"3. Section 3864, Rev. Laws 1910, supplements section 3862, and extends the protection therein given, among others, to contractors, materialmen, etc., to subcontractors, etc., but the rights of the subcontractor are neither superior nor inferior to those of the contractor where the 'sub' does or furnishes what the contractor agreed to furnish. The basis of the lien of each is a valid contract with the property owner.

"4. When a valid and enforceable contract is entered into between the builder or contractor and the realty owner to furnish the material and build a house on the realty described, and the contractor has a materialman furnish the material to do the job, the materialman has a lien under section 3864, Rev. Laws

1910, to the same extent as would the contractor have had under section 3862, had he furnished the same."

Following their quotation counsel make the following observation:

"It is to be observed from the rules thus announced that as the basis of a lien as between a contractor and the property owner, or a materialman and property owner, there must be existent a valid and enforceable contract. In other words, at the beginning, the contractor, or materialman, must be obligated to perform, or furnish a specified thing, and that 'the rights of the subcontractor are neither superior, nor inferior, to those of the contractor where the "sub" does, or furnishes, what the contractor agreed to furnish,' and that 'the basis of the lien of each is a valid contract with the property owner?'"

There is also cited the case of Dolese Bros. v. Andrecopulas, 113 Okla. 18, 237 P. 844, and quote therefrom as follows:

" 'A subcontractor is one who has entered into a contract, expressed or implied, for the performance of an act with a person who has already contracted for its performance.' * * *

"In Ryndak v. Seawell, 13 Okla. 737, 76 P. 170, it is said:

" 'A subcontractor is one who takes a portion of a contract from the principal contractor.'

"A contractor, such as we have, is one standing in direct relation to the proprietor and responsible to him, permitted by the nature of his contract to perform the same or sublet portions of it if he sees fit. A subcontractor, then, is one whose relation to the principal contractor is substantially the same, as to a part of the work, as the original contractor's is to the owner. He is distinguished from one contemplating and performing personal service. He is one who obligated to produce an agreed result.

"A subcontractor is one who contracts with his principal to do work embraced in the original contractor's agreement. The significant element in the relation between a contractor and his principal is the work as an entirety to be performed, as distinguished from personal service.

"24 Am & Eng. Encyclopedia (1st Ed.) 140:

" 'A subcontractor is one who has entered into a contract, expressed or implied, for the performance of an act with a person who has already contracted for its performance.' Farmers Loan & Trust Co. v. Canada & St. L. R. Co. (Ind.) 26 N. E. 786, 11 L. R. A. 740; Lester v. Houston, 101 N. C. 605, 8 S. E. 366; Smith v. Wilcox (Ore.) 74 P. 708, 75 P. 710.'

"To be entitled to a lien under section 7463, supra, for materials furnished and used in the construction of improvements, as this record discloses, it is not essential that the materialman have direct contractual relation with the owner of the property or the original contractor. It is essential that such materialman have knowledge of such contract existing between the owner and contractor and that such materialman make his contract and furnish his materials in accord and compliance with the original contract; that is to say, that he contract and perform part of the obligation, which bound the contractor. This rule follows regardless of the degree such subcontractor may be removed from the owner or original contractor. 18 R. C. L. 910; Farmer v. St. Croix Power Co., 117 Wis. 76, 93 N. W. 830, 98 A. S. R. 914."

Construing this case, counsel say:

"It is clear from this case that to form the basis of a lien there must be existent between the contractor and the property owner, an agreement by which the contractor is obligated to produce an agreed result, as distinguished from personal service, and that in order to be classified as a subcontractor, such subcontractor must have contracted with the contractor to do a part of the work, or furnish some part, if not all, of the materials called for and embraced in the contractor's agreement. * * *

"The meaning of what was said by our court is that there must be existent more than what may be termed an ordinary contract between seller and purchaser that the purchaser will pay for the materials purchased; or, in other words, the transaction must be more than the ordinary, everyday barter and sale across the counter."

Concluding that, measured by these standards, the transaction between the plaintiff and Blaine & Lance is a sale of merchandise in the ordinary course of trade, counsel quotes the following from Wagoner v. Darby (Kan.) 30 P. 475:

"A lien is not acquired by a vendor for materials sold to a contractor, when they are supplied under an ordinary sale on credit, though the contractor may actually use them in building a house, or making an improvement. Clark v. Hall, 10 Kan. 81; Weaver v. Sells, Id., 609; Chapin v. Paper Works, 30 Conn. 471; Odd Fellows Hall v. Masser, 24 Pa. St. 507."

It is contended that the notations, "Your No. Rogers Job," appearing on invoices, and "plumbing contract," appearing upon defendants' check to Blaine & Lance, bear no legal significance, and in support thereof the case of Hedden Construction Co. v. Proctor & Gamble Co., 114 N. Y. Supp. 1103, is quoted from at length.

The substance of the holding of the New

York court in the cited case is that a symbol, indicating the job, noted on the purchase order of the contractor, merely afforded knowledge to the lumber company that the material would be used on such job, and that such knowledge would not change the position of the lumber company from that of materialman to that of subcontractor, when to be the latter under the New York statute there must have been a subletting of a portion of the contract for the improvement of real estate. The test under the New York law is different from that under the Oklahoma law and has no pertinency to the question other than recognizing that such a notation affords knowledge to the one selling the lumber that the material is purchased for a particular job.

There are also cited the following cases: Holmes v. Dolese Bros., 117 Okla. 298, 246 P. 372; Wm. Cameron Co. v. Beach, 44 Okla. 663, 146 P. 29; Ketch v. Cox, 105 Ok'a. 283, 232 P. 832; Birmingham v. Houston McCune Lumber Co., 171 Okla. 88, 41 P. (2d) 856; Gentry-Bowers Lbr. Co. v. Hamill, 75 Okla. 210, 182 P. 687.

These are cases where the materialman furnished material to the contractor and undertook to establish materialman's lien under section 10975, which would necessitate a contract direct with the owner, instead of proceeding under section 10977 to establish lien as subcontractor. These cases are not in point. However, in Gentry-Bowers Lbr. Co. v. Hamill, supra, the court expressly recognized the right of the materialman to obtain a lien as subcontractor, as will be noted from the following language:

"It is not sought to enforce a subcontractor's lien. * * * Such materialman might have a lien as subcontractor under section 3864, Rev. Laws 1910 (section 10977, O. S. 1931), but no right is claimed in this action under that section of the statutes."

A number of other cases are cited, but they are directed at establishing the proposition that the plaintiff cannot pursue a seller's lien against the fixtures. Inasmuch as plaintiff in its brief expressly declares that it claims no lien upon the fixtures as seller on account of unpaid purchase price and rests its case solely upon its right as subcontractor, it is unnecessary to consider these cases further.

Since the defendants do not recognize plaintiff as the seller 'and plaintiff does not recognize defendants as the purchaser, it follows that Blaine & Lance, when purchasing the fixtures, were not acting in capacity of agent of the defendants.

That the fixtures purchased by Blaine & Lance were purchased for and to be used in connection with the improvement in the defendants' home is a fact known to defendants and Blaine & Lance and believed by plaintiff at time of making the sale to Blaine & Lance; that the fixtures were so used is likewise a fact.

The preliminary question is whether Blaine & Lance could make a contract with defendants for the furnishing and installation of bathroom fixtures, which contract, under provisions of section 10975, would entitle them to a lien, and if so, whether the relation existing between them constituted such a contract; for if this is found in the affirmative, the right of the plaintiff will be coextensive with that of Blaine & Lance to the extent of plaintiff's performance.

That it was competent for Blaine & Lance to enter into a contract for the furnishing and installation of the fixtures under such a contract as would entitle the former to a lien as contractor under section 10975, is not denied; nor is it denied that if such contract existed, the plaintiff's lien would be coextensive therewith. The objection to the contractual relation is stated as follows:

"There was no contract in the sense that an agreement had been entered into before the work was begun between the Rogerses and Blaine & Lance, in that certain and definite improvements were to be made, nor for an agreed price. The improvements were made as Mrs. Rogers decided to purchase equipment from time to time."

That there existed a contractual relation is thus admitted. The scope of the contractual relation is indicated to some extent at least by defendants making payment for both fixtures and installation services at one time, which was the measure of performance upon their part. A test of the question would be whether, if the account had not been paid, Blaine & Lance would have been entitled to file a lien therefor under said section.

Preceding the purchase of the fixtures, Blaine & Lance were under a contractual relation to remove, rearrange, and reinstall the existing fixtures. During the progress of the work it was desired to substitute new fixtures, and such new fixtures had to be acquired. It was clearly competent for the parties to make the change and competent for Blaine & Lance to be charged with the duty of securing the new fixtures to be installed, and this they did. There was a definite agreement as to the fixtures and

as to the installation. The fact that neither the price for the fixtures nor for the installation was agreed upon in advance does not affect the validity of the contract, nor could it, after performance, affect its enforceability. If the price for both fixtures and services were not paid, a lien would have been afforded Blaine & Lance as contractors. This being true, the plaintiff would be entitled to a lien coextensive with that of Blaine & Lance to the extent the fixtures furnished by them for the purpose were installed.

Touching the status of Blaine & Lance as contractors, under the circumstances, we quote with approval the following expressions from the Supreme Court of Oregon in the case of Bernard v. Hassan, 118 P. 201:

"An original contractor, within the meaning of the mechanic's lien law, is one who furnishes labor, or labor and materials, upon a contract direct with the owner. Boisot on Mech. Liens, sec. 220. The contract need not be express, but may be implied.

"If one combines labor on the premises in connection with the furnishing of material, he is a contractor and not a materialman."

The same idea is thus expressed by the Supreme Court of Michigan in the case of Stephens Lbr. Co. v. Townsend-Stark Corp., 199 N. W. 706, 201 N. W. 213.

Touching the alleged indefiniteness of the contract, we have heretofore held in Sherbondy v. Tulsa Boiler & Mach. Co., 99 Okla. 214, 215, 216, 226 P. 564, 565, 566, to the following effect:

"While a contract may be so indefinite that an action for damages will not lie for a breach thereof and specific performance would not be enforced, yet when a party fully performs his part of the contract, and the opposite party accepts the benefits of such performance, the element of definiteness is supplied and it then becomes a binding and enforceable contract. * * *

"The defendants insist that said contract is void for want of mutuality, 'and because it is too vague and indefinite. It is true, where a contract is so vague and indefinite that the intention of the parties cannot 'be ascertained therefrom, or where there is a want of mutuality, an action for damages for breach of said contract cannot lie, nor can specific performance of said contract be required, yet when such contract has been fully performed by one of the parties, and the opposite party accepts the benefits of said contract, it becomes binding on such party, and it relates back and takes effect as of the date of the contract. 13 Corpus Juris p. 334, sec. 181; Yokey v. Yokey (Kan.) 148 P. 665; Little Butte Mines Co. v. Girand (Ariz.) 123 P. 309; McDougall v. McDonald (Wash.) 150 P. 628. So. when the plaintiff fully performed its part of the contract by furnishing the material which it agreed to furnish, and it was accepted, it cannot be said that the contract is void for vagueness and indefiniteness, because these elements have been supplied by the performance; neither can it be said that the contract is void for want of mutuality, because that element was supplied by the defendants ratifying the contract, and accepting the benefits of it.

"The defendants overlooked the fact that the contract under consideration is an executed contract and not an executory one."

To the effect that materials furnished at different times but as complements of a whole purpose are to be treated as parts of the same account, we held as follows in the case of Mid-Co. Pipe & Supply Co. v. Central Torpedo Co., 127 Okla. 273, 260 P. 753:

"The rule is settled in this jurisdiction that where, as in this case, material is furnished to be used for the same general purpose, as for the development of an oil and gas lease, though the material be ordered at different times, yet, if the separate parts form an entire whole, and are so connected as to show that the parties regarded the separate items of material furnished at different times as being parts of the entire account, and not constituting separate accounts, the furnishing of said material in this matter will be considered as a single contract."

In light of the foregoing it cannot be held that the purchase of fixtures by defendants of Blaine & Lance was a purchase in course of ordinary trade, and thus not involved under a contract involving installation as well as selling. Had these fixtures been purchased of Blaine & Lance without there being any agreement, express or implied, that they, Blaine & Lance, were to install the same, and it appeared that at some later date. when defendants were free to secure the service of whom they might, they employed Blaine & Lance to install and same were installed, Blaine & Lance would not have been entitled to lien for purchase price if still owing. For in such case the furnishing of the fixtures would be entirely divorced from the improvement contract involving installation. Such a situation would support defendants' contention, but it is not the situation here. In the instant case, to hold that the contract to furnish the fixtures can be segregated from the contract to install the fixtures, both entered into to achieve a single purpose of improve-

ment, would defeat the very purpose of the lien statutes.

The judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys J. E. Thrift, F. A. Speakman, and C. J. Davenport in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Thrift and approved by Mr. Speakman and Mr. Davenport, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

OSBORN, C. J., and WELCH, PHELPS, CORN, and HURST, JJ., concur.